IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEG TECHNOLOGIES, INC. and
KURT HÖRGER,

      Plaintiffs,

v.

REINHART LAIMER, SEWER
EQUIPMENT CORPORATION,
LAIMER UNICON, LLC, an SMK
ROHRSDÖRF GmbH,

      Defendants.

:
:
:
:
:
:  CIVIL ACTION NO.
:  1:04-CV-0253-RWS
:
:
:
:
:
:
:
:
:

## ORDER

Presently before the Court for review are Defendants' Motions to Set Aside Clerk's Entry of Default and Motion for Reconsideration of Order Granting Motion for Default Judgment [82-1; 87-1]. Following its review of the record, the parties' briefs, and supporting affidavits, the Court enters the following Order.

### Background

Plaintiffs initiated this suit on January 29, 2004 against Defendants

AO 72A
(Rev.8/82)

Reinhart Laimer ("Laimer"), Lamier Unicon, LLC ("Lamier Unicon"), and Sewer Equipment Corporation ("SEC"), asserting claims for, *inter alia*, patent infringement, unfair competition, computer fraud and abuse, deceptive trade practices, misappropriation of trade secrets, breach of fiduciary duty, and conversion.  Defendants answered the complaint in the time allotted by the Federal Rules of Civil Procedure, and appeared to defend a preliminary injunction sought by Plaintiffs at a hearing held on February 13, 2004.  Moreover, Defendants consented to an amendment to the complaint adding SMK Rohrsdörf GmbH ("SMK") as a party, and SMK, once served, filed a timely responsive pleading in mid-April 2004.

Following this brief period of initial participation, however, Defendants began to exhibit a pronounced and sustained apathy towards this litigation, and their responsiveness to both Plaintiffs' filings and the orders of this Court demonstrated a serious neglect of the judicial process.

Initially, Defendants failed to submit any response to a motion filed by Plaintiffs in late-February 2004 seeking to dismiss their counterclaim for copyright infringement.  Standing unopposed, that motion was granted by the Court on June 10, 2004.  (See June 10, 2004 Order [31-1].)  In addition, with the

2

exception of SMK, none of the Defendants filed a responsive pleading to Plaintiff's First Amended Complaint [18-1].  When Plaintiffs later moved to file a second amended complaint, moreover, Defendants neither opposed the amendment nor responded in compliance with the mandates of Federal Rule of Civil Procedure 15(a).

Thereafter, in October of 2004, Plaintiffs filed two motions taking issue with Defendants' lack of participation in the discovery process.  First, Plaintiffs submitted a motion seeking to compel Defendants to respond in some manner to their document requests, provide supplemental answers to interrogatories, and instruct certain employees to respond to questions asked of them during depositions.  (See Pls.' Mot. to Compel [36-1].)  They additionally moved to have SMK produce a witness for a noticed 30(b)(6) deposition, citing its previous failure to designate such a witness or to file a motion for protective order in response to the deposition notice.  (Pls.' Mot. to Compel Rule 30(b)(6) Designation [37-1].)

Defendants neglected to file timely responses to either of these motions.[1]

---

[1] SMK did file a belated two-page response to Plaintiffs' Motion to Compel Rule 30(b)(6) Designation, but offered no explanation for its failure to comply with the deposition notice except that it had suffered from an amorphous "misunderstanding" and

3

In light of this failure to respond, the Court granted Plaintiffs' motions as unopposed. It ordered Defendants to provide full and complete responses to Plaintiffs' discovery requests, ordered SMK to designate a Rule 30(b)(6) witness, and awarded Plaintiffs their reasonable expenses, including attorney's fees, for bringing the successful discovery motions. (See Jan. 19, 2005 Order [44].) Additionally, the Court extended the discovery period for thirty days from the date of its Order (*i.e.*, until February 18, 2005) to permit Defendants to comply with their discovery obligations. (See Nov. 22, 2004 Order [41].)

On January 20, 2005, the day after the Court handed down its Order compelling Defendants' participation in discovery, Plaintiffs sent counsel for Defendants a letter suggesting certain deposition dates for the Rule 30(b)(6) deposition of SMK within the extended discovery period. Defendants did not respond to this letter, and, on February 1, 2005, KEG served a second Rule 30(b)(6) deposition notice on defense counsel, setting a deposition date of February 15, 2005. A week later, defense counsel replied with an email informing Plaintiffs that SMK would not appear for the deposition, explaining

---

was awaiting this Court's resolution of its motion to dismiss for lack of personal jurisdiction. SMK, however, had not filed such a motion to dismiss.

that his client's principal and its German attorney were on vacation.  When Plaintiffs then requested an alternative deposition date, expressing their amenability to an extension of the discovery period if one was provided, defense counsel again neglected to respond.

Likewise, Defendants did not fully comply with the Court's Order respecting written discovery.  On the last day of the extended discovery period, Mr. Laimer, Laimer Unicon, and SEC tendered a two-page general objection to Plaintiffs' requests for production of documents.  SMK served no such response, and none of the Defendants served the supplemental interrogatory responses required by the Court's Order.

In late February 2005, Plaintiffs moved for the entry of default and for default judgment against Defendants, citing their failure to file any responsive pleadings to Plaintiffs' Second Amended Complaint and to comply with the Court's January 19, 2005 Order in several material respects.  Defendants, in a belated response to those motions, opposed the relief and sanctions sought therein, urging (incorrectly) that there is no requirement under the Federal Rules to respond to amended pleadings.  In addition, Defendants informed the Court that "all efforts [were] being made to respond fully to the [outstanding

discovery] requests[.]" Plaintiffs took issue with this characterization, explaining that Defendants' promises of forthcoming discovery responses even following the motion for default had gone largely unfulfilled.

The Court, in an Order dated May 20, 2005, granted Plaintiffs' motions. While acknowledging the harshness of the result, it found such a sanction justified, reasoning:

> The severity of the sanction is appropriately commensurate with the pervasiveness of Defendants' noncompliance with the Federal Rules, their incessantly belated and incomplete filings, the inexcusable unfamiliarity with the procedures under which this Court operates, and, above all, their recalcitrance in the face of this Court's January 19, 2005 Order.  Moreover, in light of the sanctions already suffered by Defendants in this case as a result of their nonparticipation–*e.g.*, losing their counterclaim to an unopposed motion to dismiss and having to bear Plaintiffs' costs and fees in bringing two successful and unchallenged motions to compel–the Court is left with the firm conviction that no lesser sanction would suffice to further the policies underlying Rules 37 and 55.

(See May 20, 2005 Order at 14.)  Defendants now ask the Court to set aside the default it entered, and reconsider its decision to grant Plaintiffs default judgment.

6

## Discussion

The Court has carefully considered the briefs submitted by Defendants. For the reasons that follow, however, it declines their request to set aside the default and reverse course on its decision to enter default judgment.

First, as it relates to Defendants' request that this Court set aside the entry of default, the propriety of such Rule 55(c) relief was already considered, and rejected, by the Court in its May 20, 2005 Order.  (See May 20, 2005 Order [68] at 9-13 (analyzing whether to enter default and considering whether default would be amenable to being set aside upon later motion).)  Although Defendants have now supplemented their original positions respecting the "culpability" of their earlier failings (which they now assert amounted to only "amazing[ ] careless[ness]") and the presence of potentially meritorious defenses, their arguments fail to persuade the Court that default should be lifted.

The truth that becomes unavoidable as one considers the record is that, virtually without fail, Defendants manifested a reckless disregard for the requirements of the Rules of Civil Procedure and the unambiguous Orders of this Court.  Notwithstanding the "liberal" and "mutable" character of Rule 55(c)'s "good cause" standard, see Compania Interamericana Export-Import,

S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir. 1996), no such cause exists on the facts of this case. Defendants are not entitled to be relieved of the consequences of their omissions .[2]

Defendants' arguments in support of reconsideration *vis-à-vis* the Court's decision to grant default judgment, moreover, fail to persuade the Court that another resolution of this controversy is appropriate. Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice." LR 7.2(E), NDGa. Consequently, such motions are not to be submitted as a matter of course, but only when "absolutely necessary." Id. Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to

---

[2]The Court appreciates the potentially serious pecuniary impact default may have on Defendants, and their frustration at having to shoulder the consequences of what they perceive to be the failings of their former counsel. Without question, such consequences are not to be taken lightly, and underlie the federal courts' consistent disinclination to impose default as a sanction. The unfortunate fact, however, is that "a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions[,]" see Larson Co. v. Consol. Mktg., Inc., 148 F.R.D. 664, 666 (N.D. Ga. 1993), and that, especially in a suit involving such a substantial sum of money, a party must exercise "some diligence to ensure that his attorney [is] protecting his interests." See Fla. Phys. Ins. Co. v. Ehlers, 8 F.3d 780, 784 (11th Cir. 1993). Although not every Defendant impacted by this Court's Order exhibited a *total* apathy towards this litigation, none has demonstrated the sort of diligence that would justify relieving it of the effects of its attorney's habitual errors and omissions. For these reasons, among others, the default will stand.

correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).

Conversely, motions for reconsideration may not be used as a vehicle to present the court with arguments which have already been raised and rejected, or to "repackage familiar arguments to test whether the court will change its mind." Bryan, 246 F. Supp. 2d at 1259.  Likewise, and critically for the purposes of the instant case, such motions "may not be used to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001).

In the instant case, Defendants' arguments directed at the Court's prior Order do not fall within the limited range of objections that may appropriately be raised in a motion for reconsideration.  Had Defendants raised similar arguments or demonstrated a similar vigor in their original (albeit belated) response to Plaintiffs Motion for Default Judgment and Sanctions [54-1], the Court might have been more amenable to sparing Defendants the "ultimate sanction" of a default judgment.  For obvious reasons, however, the Court is disinclined to

9

allow a party to escape the consequences of their previous malfeasance (or nonfeasance) by beginning to take litigation seriously, for the first time, after the imposition of such a sanction. Such a wavering precedent would not serve well one of the primary objectives of the sanction; namely, "to deter other litigants from engaging in like [dilatory or recalcitrant] conduct." See Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 129-30 (S.D. Fla. 1987). Furthermore, it would be manifestly unfair to Plaintiffs–who have now had to endure, for over a year and a half, the frustration and expense of dealing with habitually nonresponsive opponents–to require them to continue expending resources in the prosecution of this action notwithstanding the loss of evidence and witnesses that invariably accompanies such an extended delay.

The Court accordingly **DENIES** Defendants' Motions to Set Aside Clerk's Entry of Default and Motion for Reconsideration of Order Granting Motion for Default Judgment [82-1; 87-1]. It does so mindful of the undesirability of placing liability on a party who has not presented the merits of his defense, but also firmly convicted of the appropriateness of such a sanction on the uniquely egregious facts of this case.

AO 72A
(Rev.8/82)

**SO ORDERED** this   28th   day of October, 2005.


<u>/s/ Richard W. Story            </u>
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

11